IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-269

Filed 6 August 2024

Beaufort County, No. 20 JB 10

IN THE MATTER OF: J.B.P.

Appeal by the State from orders entered 7 and 28 October 2022 by Judge Keith B. Mason in Beaufort County District Court. Heard in the Court of Appeals 28 November 2023.

> *Attorney General Joshua H. Stein, by Special Deputy Attorney General Zachary K. Dunn, for the State.*

> *Appellate Defender Glenn Gerding, by Assistant Appellate Defender Wyatt B. Orsbon, for Other-Appellee J.B.P.*

CARPENTER, Judge.

The State appeals from two orders: one granting J.B.P.'s (the "Juvenile's") motion to suppress and another dismissing his charges. On appeal, the State argues that we should reverse the trial court's orders because the trial court incorrectly concluded that the police lacked probable cause to search the Juvenile's car. After careful review, we agree with the State. Accordingly, we reverse the trial court's orders.

## I. Factual & Procedural Background

On 22 September 2022, Investigator Jason Cleary and Lieutenant Russell Davenport of the Beaufort County Sheriff's Office searched the Juvenile's car. The

officers found marijuana, a digital scale, and a handgun during the search, which prompted the officers to file delinquency petitions[1] against the Juvenile. The petitions alleged that the Juvenile possessed marijuana with the intent to sell or distribute, and that he carried a concealed handgun. On 3 October 2022, the Juvenile filed a motion to suppress evidence obtained from the search of his car. The Juvenile argued that the search violated the Fourth Amendment of the United States Constitution.

On 6 October 2022, the trial court heard arguments concerning the Juvenile's motion. Evidence at the motion hearing tended to show the following. On 22 September 2022, Lieutenant Davenport drove past the Juvenile's car, which was parked outside of a suspected drug house. Lieutenant Davenport "was able to smell the odor of marijuana in the vicinity of the car." Lieutenant Davenport had recently attended a hemp training program, and according to Lieutenant Davenport, based on his training and experience, he could discern the difference between marijuana and hemp. Lieutenant Davenport radioed his observations to the "drug unit," which included Investigator Cleary, who joined Lieutenant Davenport in surveilling the Juvenile's car.

---

[1] "A juvenile petition is the pleading in a juvenile delinquency proceeding" that "must 'contain a plain and concise statement, without allegations of an evidentiary nature, asserting facts supporting every element of a criminal offense and the juvenile's commission thereof with sufficient precision clearly to apprise the juvenile of the conduct which is the subject of the allegation.'" *In re J.U.*, 384 N.C. 618, 621, 887 S.E.2d 859, 862 (2023) (quoting N.C. Gen. Stat. § 7B-1802).

Lieutenant Davenport then watched the Juvenile's car leave the suspected drug house. The car returned to the house and left again. This time, Investigator Cleary followed and stopped the car. As suspected, the Juvenile was driving, and Investigator Cleary "could smell the odor of marijuana coming from inside the car." Investigator Cleary also smelled the odor coming from the Juvenile's person and noticed "bits and pieces of marijuana in the floorboard." Based on his training and experience, Investigator Cleary testified that marijuana has a "very distinct strong smell," and according to Investigator Cleary, while hemp does have a smell, it is "not as pungent and strong as marijuana." Investigator Cleary searched the car and found a handgun, a digital scale, and 13.7 grams of marijuana.

The trial court orally granted the Juvenile's motion to suppress. On 28 October 2022, the trial court reduced the ruling to a written order. In the order, the trial court concluded that Investigator Cleary properly stopped the Juvenile's car, but he improperly searched it. Specifically, the trial court concluded that "Investigator Cleary did not have probable cause to believe that the Vehicle was carrying marijuana rather than legal hemp, or any other controlled substance which would have justified a warrantless search of the Juvenile's vehicle."

Before reaching these conclusions, the trial court took notice of a 2019 State Bureau of Investigation memo (the "SBI Memo"). The SBI Memo concluded that an officer's supposed sight or smell of marijuana no longer establishes probable cause of

marijuana possession because marijuana is indistinguishable from hemp. Specifically, the trial court made the following findings:

> 15. The Court took judicial notice of the State Bureau of Investigation Memo entitled "Industrial Hemp/CBD Issues" (hereinafter "the SBI Memo") which was published in 2019 in response to proposed NC Senate legislation. This memo states that:
>
> Hemp and marijuana look the same and have the same odor, both unburned and burned. This makes it impossible for law enforcement to use the appearance of marijuana or the odor of marijuana to develop probable cause for arrest, seizure of the item, or probable cause for a search warrant. . . . Therefore, in the future when a law enforcement officer encounters plant material that looks and smells like marijuana, he/she will no longer have probable cause to seize and analyze the item because the probable cause to believe it is evidence of a crime will no longer exist since the item could be legal hemp.
>
> 16. None of the alleged controlled substances recovered from the Vehicle were ever subjected to any type of chemical analysis to determine if they were in fact marijuana.
>
> 17. Based on the SBI Memo, the Court finds that the testimony of Investigator [Cleary] and Lt. Davenport that they observed marijuana in the Vehicle, and that they smelled marijuana from the Vehicle, rather than legal hemp, is not credible.

Because the trial court suppressed all the evidence against the Juvenile, the trial court also entered an order dismissing the charges from the Juvenile's petition. The State timely filed written notices of appeal from the order granting the motion to suppress and the order dismissing the Juvenile's charges.

## II. Jurisdiction

This Court has jurisdiction under N.C. Gen. Stat. § 15A-1445(a)(1) (2023).

## III. Issue

The issue on appeal is whether the trial court erred by granting the Juvenile's motion to suppress, which led to a dismissal of his charges. More specifically, the issue is whether the trial court erred by concluding that an officer's purported sight or smell of marijuana does not create probable cause to suspect marijuana possession.[2]

## IV. Analysis

### A. Standard of Review

We review a motion-to-suppress order to see "whether competent evidence supports the trial court's findings of fact and whether the findings of fact support the conclusions of law." *State v. McCrary*, 237 N.C. App. 48, 51–52, 764 S.E.2d 477, 479 (2014) (quoting *State v. Biber*, 365 N.C. 162, 167–68, 712 S.E.2d 874, 878 (2011)). We review the order's conclusions of law de novo. *Id.* at 52, 764 S.E.2d at 479. Under a de novo review, this Court "'considers the matter anew and freely substitutes its own judgment' for that of the lower tribunal." *State v. Williams*, 362 N.C. 628, 632–33,

---

[2] The State specifically states that it "does not challenge the trial court's conclusion that Investigator Cleary possessed a reasonable articulable suspicion of criminal activity which justified the initial stop of the Juvenile's vehicle." The State also does not challenge the trial court's decision to take judicial notice of the SBI Memo. Accordingly, we address neither the initial stop nor the judicial notice.

669 S.E.2d 290, 294 (2008) (quoting *In re Greens of Pine Glen Ltd. P'ship*, 356 N.C. 642, 647, 576 S.E.2d 316, 319 (2003)).

## B. The Fourth Amendment

The Fourth Amendment of the United States Constitution prohibits "unreasonable searches and seizures." U.S. CONST. amend. IV. The Fourth Amendment applies to the State, *State v. Campbell*, 359 N.C. 644, 659, 617 S.E.2d 1, 11 (2005), and it prohibits the State from unreasonably searching vehicles, *see State v. Spruill*, 33 N.C. App. 731, 733–34, 236 S.E.2d 717, 718–19 (1977).

Generally, searches conducted without a warrant are "*per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States,* 389 U.S. 347, 357, 88 S. Ct. 507, 514, 19 L. Ed. 2d 576, 585 (1967) (footnote omitted). One such exception is when there is probable cause that a vehicle contains contraband, such as a controlled substance. *State v. Degraphenreed*, 261 N.C. App. 235, 241, 820 S.E.2d 331, 336 (2018).

Probable cause is "a reasonable ground" to suspect criminal activity. *State v. Yates*, 162 N.C. App. 118, 122, 589 S.E.2d 902, 904 (2004) (quoting *State v. Harris*, 279 N.C. 307, 311, 182 S.E.2d 364, 367 (1971)); *Maryland v. Pringle*, 540 U.S. 366, 371, 124 S. Ct. 795, 800, 157 L. Ed. 2d 769, 775 (2003) ("[T]he substance of all the definitions of probable cause is a reasonable ground for belief of guilt . . . ." (quoting

*Brinegar v. United States*, 338 U.S. 160, 175, 69 S. Ct. 1302, 1310, 93 L. Ed. 1879, 1890 (1949))).

Probable cause requires only a probability of guilt, not absolute proof of guilt. *Illinois v. Gates*, 462 U.S. 213, 243 n.13, 103 S. Ct. 2317, 2335 n.13, 76 L. Ed. 2d 527, 552 n.13 (1983). Probable cause does not turn on the innocence or guilt of conduct—but instead on the "degree of suspicion that attaches to" the conduct. *Id.* at 243 n.13, 103 S. Ct. at 2335 n.13, 76 L. Ed. 2d at 552 n.13. "[T]herefore, *innocent behavior* frequently will provide the basis for a showing of probable cause . . . ." *Id.* at 243 n.13, 103 S. Ct. at 2335 n.13, 76 L. Ed. 2d at 552 n.13 (emphasis added).

**C. Marijuana & Hemp**

It is unlawful for someone in North Carolina to possess a controlled substance, and marijuana is a controlled substance. *See* N.C. Gen. Stat. §§ 90-94(b)(1), -95(a)(3) (2023). In 2015, however, the General Assembly passed the Industrial Hemp Act (the "IHA"), "which legalized the cultivation, processing, and sale of industrial hemp within the state, subject to the oversight of the North Carolina Industrial Hemp Commission." *State v. Parker*, 277 N.C. App. 531, 539, 860 S.E.2d 21, 28 (2021) (citing N.C. Gen. Stat. § 106-568.50). "Industrial hemp is a variety of the species Cannabis Sativa—the same species of plant as marijuana." *Id.* at 539, 860 S.E.2d at 28.

In the past, we have held that the sight or smell of marijuana inside a vehicle establishes probable cause to search that vehicle. *E.g., State v. Mitchell*, 224 N.C. App. 171, 175, 735 S.E.2d 438, 442 (2012). But the *Parker* Court recognized the

question created by the IHA: Because illegal marijuana is so similar to legal hemp, does perceived sight or smell of marijuana, without more, still establish probable cause of marijuana possession? 277 N.C. App. at 541, 860 S.E.2d at 29. The *Parker* Court, however, did not directly answer the question because there, officers "had more than just the scent of marijuana to indicate that illegal drugs might be present in the car." *See id.* at 541, 860 S.E.2d at 29.

**D. The SBI Memo**

With all due respect to the executive branch, an agency's legal interpretation is not controlling. *See State ex rel. Utils. Comm'n v. Pub. Staff-N.C. Utils. Comm'n*, 309 N.C. 195, 211–12, 306 S.E.2d 435, 444–45 (1983). The judicial branch—not the executive or legislative—is the final arbiter of the law. *Id.* at 212, 306 S.E.2d at 445; *see also Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177, 2 L. Ed. 60, 73 (1803) ("It is emphatically the province and duty of the judicial department to say what the law is."); *Bayard v. Singleton*, 1 N.C. 5, 6–7, 1 Mart. 48, 49–50 (1787) (establishing the doctrine of judicial review in North Carolina, several years before *Marbury*).

**E. Application**

First, we must address the trial court's reliance on the SBI Memo. Because of the IHA, the SBI Memo states that police no longer have probable cause to suspect marijuana possession simply because police see or smell what they believe to be marijuana. This is because, according to the SBI, "[h]emp and marijuana look the same and have the same odor, both unburned and burned."

The trial court erred by accepting the SBI's probable-cause analysis: We conclude that the SBI Memo conflicts with the Fourth Amendment. *See, e.g., Pringle*, 540 U.S. at 371, 124 S. Ct. at 800, 157 L. Ed. 2d at 775. Moreover, the SBI is not the ultimate arbiter of whether probable cause exists to support a search. *See Marbury*, 5 U.S. (1 Cranch) at 177, 2 L. Ed. at 73. The SBI may, as a matter of policy, instruct its agents not to charge under these circumstances, but the SBI lacks authority to declare that an officer cannot establish probable cause under these circumstances. Whether an officer had probable cause at the time of a search is for the courts to discern.

Here, after lawfully stopping the Juvenile's car, Investigator Cleary smelled what he believed to be marijuana odor coming from inside of the car. He also observed what he believed to be bits of marijuana on the floor of the car. This evidence, without more, created a reasonable probability that the car contained marijuana. *See Yates*, 162 N.C. App. at 122, 589 S.E.2d at 904. Thus, this evidence established probable cause that the car contained marijuana. *See Pringle*, 540 U.S. at 371, 124 S. Ct. at 800, 157 L. Ed. 2d at 775.

Marijuana is contraband, *see* N.C. Gen. Stat. §§ 90-94(b)(1), -95(a)(3), and even if illegal marijuana could be confused with legal hemp, a police officer's professed sight or smell of marijuana creates a probability of contraband possession. *See Gates*, 462 U.S. at 243 n.13, 103 S. Ct. at 2335 n.13, 76 L. Ed. 2d at 552 n.13. Therefore, the officers' warrantless search of the Juvenile's car complied with the Fourth

Amendment because the officers had probable cause to believe that the car contained contraband. *See Degraphenreed*, 261 N.C. App. at 241, 820 S.E.2d at 336.

The foundation of the trial court's contrary conclusion is that Investigator Cleary's suspicion of marijuana possession could have been based on legal behavior: hemp possession. And based on the SBI Memo, the trial court did not believe that Investigator Cleary could distinguish between illegal marijuana and legal hemp. Therefore, the trial court concluded that Investigator Cleary could not establish probable cause of marijuana possession only through his purported sight or smell of marijuana.

But the trial court's conclusion requires an elevated probable-cause standard. *See Gates*, 462 U.S. at 243 n.13, 103 S. Ct. at 2335 n.13, 76 L. Ed. 2d at 552 n.13. For the sake of argument, we will accept the SBI Memo's factual premise: Hemp and marijuana are indistinguishable. It does not follow, however, that the possibility of confusing marijuana with hemp prevents probable cause of marijuana possession. This is because probable cause does not turn on the innocence or guilt of conduct. *See id.* at 243 n.13, 103 S. Ct. at 2335 n.13, 76 L. Ed. 2d at 552 n.13 (stating that "*innocent behavior* frequently will provide the basis for a showing of probable cause" (emphasis added)).

The Fourth Amendment probable-cause test is whether it was reasonable for Investigator Cleary to believe that his sight and smell of what he thought was marijuana created a reasonable likelihood that Defendant illegally possessed

marijuana. *See Yates*, 162 N.C. App. at 122, 589 S.E.2d at 904. We hold that it was. If Investigator Cleary confused legal hemp for illegal marijuana, that fact must be proven at trial under the beyond-a-reasonable-doubt standard—not at suppression hearing under the probable-cause standard.

## V.    Conclusion

We conclude that the trial court erred by granting the Juvenile's motion to suppress and dismissing his charges. Contrary to the trial court's conclusion, a police officer's sight or smell of marijuana creates probable cause of marijuana possession, even if a police officer could possibly confuse illegal marijuana with legal hemp. We therefore reverse the trial court's orders.

REVERSED.

Judges COLLINS and WOOD concur.