STATE OF NORTH CAROLINA v. RANDALL EUGENE CLINE, JR.

No. COA10-7

(Filed 20 July 2010)

**Search and Seizure— warrantless entry into home—exigent circumstances—motion to suppress correctly denied**

The trial court did not err in a controlled substances case by denying defendant's motion to suppress evidence seized from his home as the result of a warrantless entry of his residence. The police officer could have reasonably believed that an individual inside defendant's home was in need of immediate assistance, justifying warrantless entry into the home.

Appeal by Defendant from judgment entered 4 August 2009 by Judge Jesse B. Caldwell in Superior Court, Gaston County. Heard in the Court of Appeals 26 May 2010.

*Attorney General Roy Cooper, by Assistant Attorney General John F. Oates, Jr., for the State.*

*Winifred H. Dillon for Defendant.*

STEPHENS, Judge.

*I. Procedural History*

On 2 August 2008, Randall Eugene Cline, Jr. ("Defendant"), was indicted for possession of marijuana, felony manufacturing marijuana, possession with intent to use drug paraphernalia to cultivate, grow, harvest, and produce a controlled substance, and maintaining a dwelling for controlled substances. On 30 January 2009, Defendant filed a motion to suppress all evidence including marijuana and drug paraphernalia seized by Gaston County police officers from Defendant's person, home, and automobile and statements made by Defendant to police officers pursuant to a warrantless entry of his residence.

A hearing on Defendant's motion was held before the Honorable Richard Boner in Gaston County Superior Court on 20 April 2009. In an order entered 27 April 2009, Judge Boner denied Defendant's motion to suppress.

On 4 August 2009, Defendant pled guilty to possession of drug paraphernalia and felony manufacturing marijuana, reserving his

STATE v. CLINE

[205 N.C. App. 676 (2010)]

right to appeal the denial of his motion to suppress evidence. The charges of maintaining a dwelling for a controlled substance and felony possession of marijuana were dismissed pursuant to Defendant's plea.

On 4 August 2009, the trial court entered judgment on Defendant's guilty plea, consolidating the charges and sentencing Defendant to a term of 36 months supervised probation. From this judgment, Defendant appeals.

## II. Factual Background

The evidence presented at the 23 April 2009 hearing tended to show the following:

On the afternoon of 2 August 2008, Russell Herman Weiss ("Weiss") and his wife were traveling on U.S. Highway 321 in Gaston County, North Carolina. They observed a small, naked child, waving his arms on the side of the road. They pulled over, picked him up, and summoned the driver behind them who called 911. Weiss estimated that the child was between two and three years old and indicated that he was unable to tell them where he lived. The child was uninjured. Gaston County Police Officer Rob Henninger ("Henninger") was on patrol nearby, received a call, and reported to the scene. Henninger observed the child who was unable to provide the officer with any information regarding his identity or residence. Henninger proceeded to the adjacent Davis Heights neighborhood. Weiss and his wife waited with the child until the child's identity was verified and his mother arrived on the scene and took custody of him. Gaston County police officers later determined that the child was Defendant's son.

Henninger went to the first mobile home in the Davis Heights neighborhood, a few hundred yards south of where the child was discovered. He spoke with the resident, Cathy Belk ("Belk"). Belk indicated that the child described sounded like Defendant's son; she pointed Henninger to Defendant's residence at 712 Davis Heights Drive. Henninger approached Defendant's home, knocked on the door two to three times, and then beat on the door two to three times. No one responded. Henninger observed a child seat on the sidewalk. Henninger saw a vehicle without a license plate parked in front of the mobile home and observed a picture on the floor board that appeared to be of the child found on the highway. He opened the door and looked through the vehicle, including the registration in the glove box, in an attempt to locate the parent of this child. Henninger con-

tacted an officer from the precinct of the address listed on the vehicle registration[1] and was informed by the officer that the subject no longer lived at that address.

Henninger approached the back of the residence and observed that the door was ajar a few feet and there was a diaper lying on the top step. Henninger felt that the situation "just wasn't right" even though he "didn't know exactly what [he] had" and he "assume[d] that it was either a dead body or something" based on his observations and the circumstances. He did not detect an odor of a dead body, did not observe any signs of criminal activity, did not hear any noises from within Defendant's residence, and did not observe any blood or weapons. Henninger entered the open door without a warrant or consent of an occupant and performed a cursory sweep of the mobile home. Henninger walked into the bathroom through the open door and observed plants in the bathtub that were later determined to be marijuana. He observed Defendant sleeping in a bedroom adjacent to the living room through an open door. Henninger called for back up before waking Defendant. Gaston County police officers Bonnie Nache and Officer Totten[2] came to Defendant's mobile home. Henninger awakened Defendant with some difficulty. Henninger questioned Defendant about his son and the plants found in the bathroom. Defendant indicated that the plants belonged to him and claimed that they were hydroponic tomatoes. Officers seized the plants. Officers left Defendant at his residence. Defendant was arrested on 7 September 2008 when lab results confirmed that the seized plants were marijuana.

### III.  Discussion

### A.  Motion to Suppress

In reviewing a trial judge's ruling on a motion to suppress, we determine only whether the trial court's findings of fact are supported by competent evidence and whether those findings support the trial court's conclusions of law. *State v. Pulliam*, 139 N.C. App. 437, 440, 533 S.E.2d 280, 282 (2000) (citing *State v. Rhyne*, 124 N.C. App. 84, 88-89, 478 S.E.2d 789, 791 (1996)).

Defendant argues that the trial court erred in denying his motion to suppress the evidence seized from his home. Defendant contends

---

1. The address listed on the vehicle registration was for a residence in Bessemer City, North Carolina.

2. The record does not establish Officer Totten's first name.

that Henninger's warrantless entry into Defendant's home was not justified by exigent circumstances and was therefore unconstitutional. We disagree.

The Fourth Amendment prohibits all "unreasonable searches and seizures." U.S. Const. amend. IV. Searches conducted without a warrant are *"per se* unreasonable . . . subject only to a few specifically established and well-delineated exceptions." *Mincey v. Arizona,* 437 U.S. 385, 390, 57 L. Ed. 2d 290, 298 (1978) (quoting *Katz v. United States,* 389 U.S. 347, 357, 19 L. Ed. 2d 576, 585 (1967)). "The Fourth Amendment is applicable to the states through the Due Process Clause of the Fourteenth Amendment." *State v. Smith,* 346 N.C. 794, 798, 488 S.E.2d 210, 213 (1997) (citing *State v. Watkins,* 337 N.C. 437, 441, 446 S.E.2d 67, 69 (1994)). Our Supreme Court has held that "[a] governmental search and seizure of private property unaccompanied by prior judicial approval in the form of a warrant is *per se* unreasonable unless the search falls within a well-delineated exception to the warrant requirement involving exigent circumstances." *State v. Cooke,* 306 N.C. 132, 135, 291 S.E.2d 618, 620 (1982). The North Carolina Constitution forbids general warrants "whereby any officer or other person may be commanded to search suspected places without evidence of the act committed, or to seize any person or persons not named, whose offense is not particularly described and supported by evidence." N.C. Const. Art. 1, § 20. The North Carolina Constitution requires that evidence discovered pursuant to an unreasonable search or seizure be excluded. *See State v. Carter,* 322 N.C. 709, 712, 370 S.E.2d 553, 555 (1988) (holding that blood evidence drawn from the defendant without a warrant and in the absence of probable cause or exigent circumstances should have been excluded and refusing to adopt a good faith exception to the exclusionary rule under the North Carolina Constitution).

A law enforcement officer's action is reasonable and therefore constitutional as long as the circumstances objectively justify the officer's behavior. See *Brigham City v. Stuart,* 547 U.S. 398, 404, 164 L. Ed. 2d 650, 658 (2006) (citing *Scott v. United States,* 436 U.S. 128, 138, 56 L. Ed. 2d 168, 178 (1978)). An objectively reasonable basis for believing either that a party has been injured and may need assistance or that further violence is about to ensue is sufficient to permit warrantless entry into a home based on that exigency. *Id.* at 406, 164 L. Ed. 2d at 659. The existence of exigent circumstances and the reasonableness of a search are factual determinations that must be made on a case-by-case basis. *State v. Johnson,* 64 N.C. App. 256, 262, 307 S.E.2d 188, 191 (1983).

In *State v. Scott*, 343 N.C. 313, 471 S.E.2d 605 (1996), our Supreme Court held that a warrantless search of the crawl space under the defendant's home was not unreasonable where the officer was summoned to the scene to investigate a missing person report, his knocks on the door went unanswered, he observed large green flies indicative of a decaying corpse, and smelled what he believed to be rotting flesh. *Id.* at 329, 471 S.E.2d at 614. The Court held that in assessing the constitutionality of a warrantless entry and evidence seized pursuant to plain view therein, the reviewing court must determine whether the action was reasonable under the circumstances, as viewed through "the eyes of a reasonable and cautious police officer on the scene, guided by . . . experience and training." *Id.* at 329, 471 S.E.2d at 615.

In *State v. China,* 150 N.C. App. 469, 564 S.E.2d 64 (2002), this Court held that an officer's warrantless entry into the defendant's home did not violate the Fourth Amendment where the trial court found that the officer arrived at the front door after receiving a call for a burglary in progress; heard a violent argument in the apartment; knocked on an open door and walked inside. This Court stated that "[o]fficers may enter a house for emergency purposes without a warrant when they believe a person in the house is in need of immediate aid or assistance in order to avoid serious injury." *Id.* at 479, 564 S.E.2d at 71 (citing *State v. Woods*, 136 N.C. App. 386, 391-92, 524 S.E.2d 363, 366 (2000)).

Although this Court has not been presented with a fact pattern similar to the instant case, the reasonableness of a warrantless search is determined on a case-by-case basis, under the totality of the circumstances. Here, Henninger, a police officer with more than ten years of experience, was summoned to the scene after motorists discovered a young, unattended toddler on the side of a major highway, near several residences. Henninger was able to ascertain the identity and residence of the child, Defendant's son, with reasonable certainty. Henninger proceeded to Defendant's mobile home where he knocked and then banged on the front door several times, without response. Henninger also observed a vehicle parked in front of the mobile home, discovered a photo inside the vehicle that appeared to be of the child, searched the glove box for a vehicle registration card, and phoned another officer who was unable to locate the child's parents based on the address on the registration. Henninger then walked to the rear of the mobile home where he observed a diaper lying on the top step and noticed that the back door was ajar. Although a sub-

jective inquiry is not relevant to the determination of the reasonableness of a search, Henninger testified that

> I knew at that point in time I had made several attempts at knocking on that door. I knew anybody that was inside would obviously have had to hear it, so I didn't know if I was dealing with a dead body, a hostage situation. I didn't know exactly what I had.

Henninger indicated that it would have taken him 15 minutes to drive to the magistrate's office and another hour and a half to two hours to obtain a search warrant to enter the premises.

Even though Henninger did not hear any sounds from within the residence, nor did he observe any blood or other signs suggesting criminal activity, a reasonable officer in Henninger's position could have believed that a party was in need of immediate assistance inside the mobile home, such that entering without obtaining a warrant was justified.

In denying Defendant's motion to suppress, Judge Boner made the following relevant findings and conclusions:

> 4. Officer Henninger went to the mobile home, where he knocked on the door two to three times and then banged on the door several times. There was no response to the knocking or banging. Officer Henninger noticed a child's seat sitting outside the mobile home. . . .

> 5. Officer Henninger walked to the rear of the mobile home, where he observed that the back door was ajar. He also observed a diaper lying on the top step of the mobile home. At that point, Officer Henninger became concerned that there might be a dead body or other emergency situation inside the trailer. Officer Henninger testified, "I didn't know what I had." Officer Henninger entered the trailer. As he walked through the trailer, he glanced into a bathroom. The door to the bathroom was open. When he glanced into the bathroom, Officer Henninger observed plants growing under a grow light in the bathtub. Officer Henninger immediately recognized the plants as marijuana plants.

> . . . .

> 10. Officer Henninger also asked the defendant about the marijuana plants he observed in the bathroom. The defendant stated that they were his plants and that they were tomato plants.

Based upon the foregoing findings of fact, Judge Boner concluded that:

1. On August 2, 2008, Officer Henninger's warrantless entry into the defendant's mobile home at 712 Davis Heights Drive, Gastonia, was justified by exigent circumstances under the totality of the circumstances. At the time of the entry, the parents of the child had not been located, and the circumstances existing at the mobile home justified a reasonable concern that a parent or other individual might be dead or otherwise in need of medical attention in the mobile home.

. . . .

4. The entry of the Gaston County police officers into the mobile home on August 2nd, 2008, the seizure of the suspected marijuana plants, and the obtaining of defendant's admission of ownership of the suspected marijuana plants did not violate any of the defendant's rights under the Constitution of the United States of America or the Constitution of the State of North Carolina.

A thorough review of the record reveals the trial court's findings of fact are supported by competent evidence, and thus are conclusive on appeal. Based on (1) the presence of an unattended child on the side of a major highway, (2) Henninger's level of certainty that Defendant was the child's father and that the mobile home at 712 Davis Heights Drive was the child's residence, (3) the absence of a response to repeated knocks on the front door, (4) the fact that the back door was ajar, and (5) the fact that obtaining a search warrant would have necessitated two hours, we hold that exigent circumstances existed for Henninger to make an immediate warrantless entry into Defendant's mobile home to ascertain whether someone in Defendant's home was in need of immediate assistance or under threat of serious injury. Accordingly, Henninger had the authority to make a warrantless entry into Defendant's home. Further, Henninger had the authority to seize suspected marijuana plants in plain view pursuant to that entry. We conclude that the uncontested findings of fact are sufficient to support the court's conclusion of law that Henninger's warrantless entry into Defendant's home was justified by exigent circumstances under the totality of the circumstances. Accordingly, Defendant's motion to suppress was properly denied.

AFFIRMED.

Judges STEELMAN and HUNTER, JR. concur.